UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **FLORENCIO HERNANDEZ** <br> *Plaintiff* <br><br> VS <br><br> **DR. GARY NAKOVIC, DDS** <br> **DENTIST, FEDERAL SATELLITE** <br> **LOW, LA TUNA** <br> *Defendant* | § <br> § <br> § <br> §   Case No. 3:14-CV-55-KC-RFC <br> § <br> § <br> § <br> § <br> § |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Florencio Hernandez, a federal prisoner, is proceeding *in forma pauperis* with a *pro se* complaint, asserting a *Bivens*[1] claim against Dr. Gary Nakovic.[2] (Docs. 1-3) Defendant filed a motion to dismiss or alternatively for summary judgment. (Doc. 11) After careful consideration of the entire record, the Court recommends that the Defendant's motion be granted.

## Procedural History

Plaintiff filed his motion to proceed *in forma pauperis* along with his complaint on February 6, 2014. (Doc. 1) The motion was granted on April 28, 2014; his complaint was subsequently filed and the clerk's office issued service of process. (Docs. 2-6) Defendant filed a motion to dismiss or in the alternative motion for summary judgment, on July 7, 2014. (Doc. 11)

## Plaintiff's Claim

Plaintiff maintains that Defendant has been deliberately indifferent to Plaintiff's serious medical needs, violating Plaintiff's Eighth Amendment Right to be free from cruel and unusual

---

[1] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

[2] The correct spelling of Defendant's name is Dr. Gary Nakovic, not "G. Nokovic, DSS" as stated in the third paragraph of the Complaint. (Doc. 11:1 n. 1)

1

punishment, which requires provision of adequate medical care. (Doc. 3:2-3, citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)) Plaintiff contends that, despite having met with Plaintiff on various occasions, Defendant, Dr. Nakovic, DDS, a dentist at the Federal Satellite Low (FSL) of the Federal Correctional Institution at La Tuna (La Tuna), failed to treat Plaintiff's gingivitis. (Doc. 3:2) Plaintiff claims that Defendant's failure to treat is inhumane because Plaintiff's gingivitis is getting worse, causes Plaintiff's gums to bleed often, and makes it hard for Plaintiff. *Id*. Plaintiff asserts that the failure to treat his gingivitis has resulted in substantial harm. *Id*. Plaintiff seeks relief in the form of an order directing the Warden to provide another dentist to treat Plaintiff and $5,000 in damages. *Id*.

## Analysis

I.   **Motion to Dismiss/Summary Judgment Standard**

A motion to dismiss for failure to state a claim is treated as one for summary judgment where matters outside the pleadings are presented to and not excluded by the court. Fed. R. Civ. P. 12(d). Summary judgment is proper where the pleadings and evidence on file demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A party seeking summary judgment bears the initial burden of proving the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant carries this burden, the burden shifts to the nonmovant to show the existence of a genuine issue for trial. *Id*., at 324-325. Conclusory allegations are not competent

summary judgment evidence and are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find for [the nonmoving party], there is no genuine issue for trial, and summary judgment is proper. If, on the other hand, the fact-finder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." *Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir. 1993) (internal citations omitted).

## II.     Failure to Exhaust Administrative Remedies

Defendant asserts that Plaintiff's complaint should be dismissed for failure to exhaust his administrative remedies. (Doc. 11:7-8, Exh. 1)

The Prison Litigation Reform Act (PLRA) requires that an inmate must exhaust all available administrative remedies before he may maintain a suit in federal court:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes" and includes *Bivens* suits by federal prisoners. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of administrative remedies requires "proper exhaustion", e.g., compliance with deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

The Code of Federal Regulations outlines a four-step process for resolving complaints by prisoners. *See* 28 C.F.R. § 542.10 et seq. Initially, a prisoner must attempt to informally resolve the complaint with staff. 28 C.F.R. § 542.13(a). If informal attempts are unsuccessful, the prisoner must submit a Request for Administrative Remedy to the Warden within 20 days following the date of the event that is the basis for the request. 28 C.F.R. §542.14. If the prisoner is not satisfied with the warden's response, he may appeal to the Regional Director within 20 days of the date of the Warden's response. 28 C.F.R. § 542.15. If still unsatisfied with the Regional Director's response, the prisoner may appeal to the Office of General Counsel within 30 days of the date of the Regional Director's response. *Id.* The Code of Federal Regulations provides that, "[w]hen the inmate demonstrates a valid reason for delay, these time limits may be extended." *Id*.

Defendant asserts that Plaintiff failed to exhaust his administrative remedies, because he failed to file an administrative remedy at all three levels required and failed to receive a substantive response at all three levels required. (Doc. 11:8, citing Exh. 1 at ¶15) Exhibit 1, the Declaration of Sonya Cole, refers to Attachment 2, a copy of the SENTRY Administrative Remedy Report for Plaintiff, summarizing all of Plaintiff's administrative remedies as of June 5, 2014 and explains the administrative codes on that report. (Doc. 11, Exh. 1 at ¶ 6, citing Attach. 2)  The explanation provided in Exhibit 1 is supported by the information reflected in Attachment 2.

According to the declaration, Plaintiff has only filed two administrative remedies. (Doc. 11, Exh. 1 para 6)  Plaintiff filed his first administrative remedy at the South Central Regional Office on September 7, 2012. (*Id*. at ¶ 8)  He requested dental treatment of his gingivitis. (*Id*.)  The South Central Regional Office rejected the remedy on September 7, 2012, because Plaintiff had not first attempted informal resolution of his complaint at the institutional level followed by filing an

4

administrative remedy to the Warden at the institutional level. (*Id*.) Plaintiff was provided a rejection notice informing him of the reasons for rejection. (*Id*. at ¶ 9) Instead of complying with the instructions provided in the rejection notice, Plaintiff filed an administrative remedy at the Office of General Counsel level on December 3, 2012, again requesting dental treatment of his gingivitis. (*Id*., at ¶ 11) The Office of General Counsel rejected this remedy on December 17, 2012 because Plaintiff did not first file his administrative remedy at the institution level. (*Id*., at ¶ 12) Plaintiff was again provided a written rejection notice and again did not follow the instructions provided to him, but instead he filed no additional administrative remedies. (*Id*., at ¶ 14)

      Significantly, Plaintiff has not filed a response to Defendant's motion to dismiss contesting Defendant's asserted facts or legal conclusions. Plaintiff has neither alleged nor shown that he attempted informal resolution, submitted an administrative remedy request to the Warden at the institutional level, and then proceeded through the steps to exhaust his administrative remedies. Nor does Plaintiff advance any argument to excuse his failure to exhaust his administrative remedies regarding his *Bivens* claim.

      Based on the foregoing, the Court concludes that Plaintiff failed to fulfill the requirements of the BOP's Administrative Remedy Program with respect to the claim he asserts in this action. Nor has Plaintiff established any applicable exception to the exhaustion requirement. Thus, Plaintiff's complaint should be dismissed for failure to exhaust his administrative remedies.

**III.     Failure to State a Claim**

      Defendant's motion also asserts that Plaintiff's *Bivens* claim should be dismissed for failure to state a claim of deliberate indifference to Plaintiff's serious medical needs. (Doc. 11 at 8-14)

In *Bivens*, the Supreme Court held that an individual injured by a federal agent's alleged violation of the individual's constitutional rights may bring an action for damages against the agent, providing deterrence against and relief for the deprivation of certain constitutionally guaranteed rights caused by a person acting under color of federal law. *Bivens*, 403 U.S. 388.

The Eighth Amendment forbids cruel and unusual punishment, which in the context of denial of medical treatment has been defined as deliberate indifference to the serious medical needs of prisoners amounting to unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976); *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997). A prisoner must allege acts or omissions sufficiently harmful to evince deliberate indifference, an extremely high standard to meet. *Farmer v. Brennan*, 511 U.S. 825, 834, 847 (1994). To prove a claim of deliberate indifference, a prisoner must establish that (1) he was deprived of a medical need that is, objectively, "sufficiently serious," and (2) the defendant knew of and disregarded "an excessive risk to inmate health or safety." *Id.*, at 837. In other words, the prisoner must show that: "(1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the official actually drew that inference; and (3) the official's response indicates that the official subjectively intended that harm to occur." *Thompson v. Upshur County*, 245 F.3d 447, 458-459 (5th Cir. 2001).

"Medical decisions that may be characterized as 'classic example[s] of matter[s] for medical judgment,' such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview. Such matters are questions of tort, not constitutional law." *Snipes v. DeTella*, 95 F.3d 586, 590-91 (7th Cir. 1996) (*quoting Estelle v. Gamble*, 429 U.S. at 107). "Unsuccessful medical treatment, acts of negligence, [neglect], or medical malpractice do not

6

constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Coldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citation omitted). Even gross negligence does not rise to the level of deliberate indifference. *Hare v. City of Corinth, Miss*, 74 F.3d 633, 645 (5th Cir. 1996).

> It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference.

*Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (citations and quotations omitted, alteration in original).

An inmate who has been examined by medical personnel on a number of occasions fails to set forth a valid showing of deliberate indifference to serious medical needs. *See Estelle v. Gamble*, 429 U.S. at 106. "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Gobert,* 463 F.3d at 346 n. 24, *quoting Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (*per curiam*)

Defendant has submitted Plaintiff's dental medical records, which reflect the following. (Doc. 11, Exh. 2, Attach. 1) Defendant performed an initial dental intake screening on Plaintiff on December 16, 2011, and noted gingivitis, plaque buildup, lingual calculus, clinical recession, and lower crowding. (Doc. 11:1-2, Exh. 2 ¶ 9, Attach. 1 at DFT 1-4) On May 4, 2012, Plaintiff presented at dental sick call with complaints of bleeding gums. (*Id*., Exh. 2 ¶ 10, Attach. 1 at DFT 5-7) Defendant performed a clinical examination which revealed absence of extra-oral and intra-oral swelling/draining fistulas in maxillary and mandibular quadrants, clinical recession with gingivitis

and plaque buildup present in maxillary and mandibular quadrants, and lingual calculus present with mandibular anteriors. (*Id*., Attach. 1 at DFT 5)  Defendant's soft tissue/oral cancer examination of Plaintiff was within normal limits.  *Id*.  Defendant's assessment for Plaintiff was chronic periodontitis.  He reviewed and used Plaintiff's dental x-rays to discuss and demonstrate to Plaintiff his chronic periodontitis and bone loss to teeth #2 and #3.  *Id*.  Defendant counseled Plaintiff on oral hygiene, diet, and use of warm saline, explained that his symptomology may or may not increase and that extractions may be necessary due to chronic periodontitis, which Plaintiff verbalized he understood, and told Plaintiff to return to sick call as needed.  *Id*.

The record does not reflect that Plaintiff returned to dental sick call before August 2013.  (*See* Doc. 11, Exh. 2, Attach. 1)  On August 29, 2013, Health Services staff took dental radiographs of Plaintiff's teeth, which Defendant reviewed with Plaintiff on August 30, 2013 and used them to discuss and demonstrate chronic periodontitis/bone loss in maxillary/mandibular quadrants.  (Doc. 11:2, Exh. 2 ¶ 12, Attach. 1 at DFT 8-10)  Plaintiff was receptive to Defendant's recommendation for initial gross debridement, and acknowledged that extractions may be required in the future.  (*Id*., Exh. 2 ¶ 12, Attach. 1 at DFT 9)  Defendant prescribed medication to Plaintiff for treatment of his chronic periodontitis.  *Id*.  The Registered Dental Hygienist (RDH) performed a gross debridement irrigation of periodontal pockets and an oral hygiene evaluation that same day.  (*Id*., Exh. 2 ¶12, Attach. 1 at DFT 11-12)  On September 6, 2013, Plaintiff was seen by Defendant with complaints of tooth sensitivity and Defendant renewed Plaintiff's medication and performed a limited examination.  *Id*.

On October 11, 2013, the RDH performed some procedures and a hygiene evaluation.  (*Id*., Exh. 2 ¶ 14, Attach. 1 at DFT 16-18)  The RDH noted Plaintiff's gingival tissue had shown

8

improvement since the gross debridement.  *Id*.  Defendant obtained a consultation from Phillip Woods, D.D.S., M.P.H., the BOP's national periodontal consultant, who on October 11, 2013, prepared an administrative note outlining several treatment recommendations.  (*Id*., Exh. 2 ¶ 15, Attach. 1 at DFT 19-20)  Defendant reconciled Plaintiff's medications and treatments to conform to Dr. Wood's recommendations.  (*Id*., Exh. 2 ¶ 15, Attach. 1 at DFT 21-46)

On November 15, 2013, the RDH performed some procedures and noted slight improvement in Plaintiff's gingival tissue.  (Doc. 11:3, Exh. 2 ¶ 16, Attach. 1 at DFT 23-25)  Defendant counseled Plaintiff on new medication and Plaintiff verbalized understanding.  (*Id*., Attach. 1 at DFT 26-27)

On December 6, 2013, the RDH performed a one month follow up of periodontal maintenance and noted gingival tissue had improved since the procedures.  (Doc. 11:4, Exh. 2 ¶ 18, Attach. 1 at DFT 28-30)  Defendant prescribed new medication based on Dr. Woods' recommendations and Plaintiff was informed he was on a four month recall for periodontal prophylaxis maintenance.  (*Id*., Exh. 2 ¶ 18-19, Attach. 1 at DFT 28, 31-32)  On December 16, 2013, Dr. Darnell R. Thomas, D.D.S. prepared an administrative note encounter explaining that the medication Defendant prescribed needed to be changed per Dr. Farida Adot, RPH.  (*Id*., Exh. 2 ¶20, Attach. 1 at DFT 33)  Interchangeable medications were substituted due to availability in the pharmacy.  (*Id*., Exh. 2 ¶ 20)

On March 7, 2014, the RDH saw Plaintiff for complaints of tooth sensitivity.  (*Id*., Exh. 2 ¶ 21, Attach. 1 at DFT 34-35)  Plaintiff's overall hygiene level was fair, with generalized light plaque noted, and his tissue response was noted to be improved with slight inflammation.  *Id*.  On March 20, 2014, Defendant prescribed new medication based on Dr. Woods' recommendation and the

availability of an interchangeable medication in the pharmacy. (*Id.*, Exh. 2 ¶ 22, Attach. 1 at DFT 36-37)

On May 9, 2014, when Defendant saw Plaintiff for complaint of tooth sensitivity, it was noted that Plaintiff continued to have chronic periodontitis, and Defendant performed a limited examination revealing slight improvement, reemphasized home care of daily flossing and brushing, and prescribed Plaintiff medication; Plaintiff told Defendant that he was compliant with his medication and verbalized his understanding of the oral hygiene instructions given to him. (Doc. 11:5, Exh. 2 ¶ 23, Attach. 1 at DFT 38-42) Defendant scheduled Plaintiff for a four month recall examination. *Id.* The RDH saw Plaintiff the same day and completed a periodontal maintenance procedure according to the plan of periodontal maintenance to which Plaintiff agreed. (*Id.*, Exh. 2 ¶ 24, Attach. 1 at DFT 43-45)

Plaintiff then filed a motion to proceed with his *Bivens* complaint on February 6, 2014. (Doc. 1)

Plaintiff's dental treatment records demonstrate that Defendant prescribed Plaintiff medication to treat his periodontitis, performed oral examinations on him, counseled him on oral hygiene, consulted with the BOP's national periodontal consultant on an appropriate plan of care for Plaintiff's periodontitis, implemented the treatment and medication recommendations received, explained his dental treatment plan to Plaintiff, and had periodontal treatment performed on Plaintiff by the RDH. (Doc. 11:11, Exh. 2 at ¶ 25, Attach. 1 at DFT 001-046) Defendant contends that though Plaintiff submitted grievances in September and December 2012 and Plaintiff's periodontal treatment did not begin until August 30, 2013, Plaintiff cannot show he suffered substantial harm as a result of any perceived delay where the records indicate there has been improvement in his

chronic periodontitis.  (Doc. 11:12, Exh. 2, Attach 1 at DFT 016)  The Court also notes that the record does not indicate that Plaintiff sought dental treatment by attending dental sick call between May 2012 and August 2013.

Plaintiff has not filed a response to Defendant's motion for summary judgment.  Plaintiff has not contested or refuted any of the facts presented by Defendant nor supplemented such facts with additional factual allegations that demonstrate either delay or denial of treatment for Plaintiff's serious medical needs amounting to deliberate indifference.

Even viewing the record in the light most favorable to Plaintiff, no rational trier of fact could find for Plaintiff; summary judgment for Defendant is proper.  *See Kelley*, 992 F.2d at 1413.

## CONCLUSION

For the reasons stated above, it is the **RECOMMENDATION** of this Court that Defendant's motion to dismiss or in the alternative for summary judgment be **GRANTED**.  Summary Judgment should be entered for Defendant because Plaintiff failed to exhaust administrative remedies and failed to state a claim upon which relief could be granted.

**SIGNED** and **ENTERED** on October 28, 2014.

_____
ROBERT F. CASTANEDA
UNITED STATES MAGISTRATE JUDGE